UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>RAOUL V. NORMANDIA JR.,<br><br>                    Defendant. | CASE NO. 20-110-RSL<br><br>**ORDER DENYING SECOND MOTION TO REOPEN DETENTION** |

Defendant's second motion to reopen detention under 18 U.S.C. § 3142(f)(2)(B), Dkt 66, has been referred to the undersigned. Dkt. 74. Defendant contends that since the Court's original order of detention there are "new facts" that support reopening the detention decision.

The issue regarding defendant's detention has a lengthy procedural history. Defendant was arrested after a complaint was filed alleging he possessed controlled substances with intent to distribute. Dkts. 1, 5. On April 30, 2020, the Court conducted a detention hearing and ordered defendant detained. Dkts. 14, 15.

Defendant appealed this detention order and the appeal was assigned to the Honorable James L. Robart, United States District Judge. Defendant argued Judge Robart should revoke the detention order because 1) he had minimal criminal history, 2) he operated a puppy kennel business that accounted for the $3,172 found in his mother's purse, 3) he has significant and

ORDER DENYING SECOND MOTION TO
REOPEN DETENTION - 1

long-term family ties, and 4) his co-defendant was released. These factors, defendant argued, showed he was not a flight risk. Additionally, defendant argued he was not a risk to the community because no fentanyl was found on his person when he was arrested or at his place of residence, and therefore any connection between an overdose death allegedly caused by fentanyl provided by defendant "is an unfair aspersion."

Second defendant argued he was detained without proper consideration of all of the statutory factors listed in § 3142: his history and characteristics including his physical and mental status, family ties, employment, financial resources, length of residence in the community, past conduct, history related to alcohol and drug use, criminal history and record of release pending trial and whether he was under sentence or supervision at the time of the alleged offense. Defendant argued based upon these factors he should be released.

On June 10, 2020, Judge Robart denied defendant's motion to revoke the detention order. Dkt. 28. Judge Robart found defendant was charged with possession with intent to deliver controlled substances, and there was a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of defendant as required and the safety of the community. Judge Robart stated he considered the five factors listed in § 3142(g) and found no impermissible disparity existed in releasing the co-defendant and detaining the defendant. The Court concluded that a sailor died from a suspected fentanyl overdose and that defendant's association with armed felons and possession of various drugs, money, body armor and firearms support detention.

On June 12, 2020, defendant filed a notice of appeal in the Circuit Court for the Ninth Circuit. Dkt. 29. On July 24, 2020 the Court of Appeals affirmed the District Court's detention order. Dkt. 32. Four days later, defendant filed a motion to reopen the detention order. Dkt. 33.

ORDER DENYING SECOND MOTION TO
REOPEN DETENTION - 2

He argued to the undersigned there was new information. In specific he contended the grey powdery substance found at his home that was suspected to be fentanyl was lab tested as negative for fentanyl. Defendant claimed the government lied about the presence of fentanyl in order to "vilify" him, and that the Court detained him as a danger to the community based upon this lie. The lab test he argued established he was not a danger to the community and that the Court should therefore release him.

The Court rejected defendant's argument stating:

> It is correct the government argued, among other things, that powder suspected to contain fentanyl was found at defendant's home and that after hearing argument from the parties the Court detained defendant. But it is incorrect to imply this sequence of events establishes the Court detained defendant based upon the government's suspicion the powder found at his home contained fentanyl, and that the Court would have released him had this suspicion not been raised. The argument turns a blind eye to how this court ordered defendant detained based upon numerous factors that established the seriousness of the case and defendant's risk to the community. These factors include the death of a Navy sailor from a suspected fentanyl overdose from pills that defendant originally supplied; Defendant's association with armed felons; and his possession of various drugs, indicia of drug distribution, money, body armor, and firearms. That fentanyl was not found at defendant's residence does not ameliorate the overall severity of the defendant's alleged conduct and the danger he presents, and the absence of fentanyl at defendant's house is not grounds for release. Parenthetically, the Honorable James L. Robart reviewed this Court's detention order *de novo* and rejected defendant's motion to vacate the detention order, finding the charges were very serious and defendant posed a risk, without citing to the suspected powder found at defendant's residence, in his written order.
>
> The Court also rejects defendant's claim the July 2, 2020 test report is material because the government "lied," to "vilify" him.  Dkt. 33 at 3.  Defendant's claim implies the government argued the powdery substance found at defendant's home might contain fentanyl when it knew the powder did not contain fentanyl. But the government never claimed it knew the powder contained fentanyl. Instead the government admitted the powder had not been tested and thus argued it only suspected the powder contained fentanyl. Defendant's claim the government lied is unfounded.
>
> Defendant's claim the government was trying to vilify him might make sense if there was no reason to suspect he was involved in the distribution of fentanyl, and thus no reason to suspect the powder contained fentanyl. But this is not such

ORDER DENYING SECOND MOTION TO
REOPEN DETENTION - 3

   a case. Rather the complaint alleged, and the government argued, defendant was
   the source of pills containing fentanyl that led to the death of a Navy sailor.
   Additionally, the arrest of defendant and search of his home yielded controlled
   substances, indicia of drug trafficking, firearms, 20 cellphones and body armor.
   These circumstances establish there was a basis for the government to believe
   defendant was engaged in drug distribution and thus a basis to suspect the
   powder at defendant's residence contained fentanyl.

Dkt. 36. Thereafter, on August 6, 2020, the Grand Jury returned an indictment charging defendant with Count (1) Conspiracy to Distribute Fentanyl, Counts (2) and (3) Distribution of Fentanyl, Count (4) Possession of Fentanyl and Cocaine with Intent to Distribute, Counts (5) and (7) Possession of a Firearm in Furtherance of a Drug Trafficking Offense, and (6) Posession of MDMA and Cocaine with Intent to Distribute. Dkt. 37.

  On September 4, 2020, defendant filed the instant second motion to reopen the detention decision. The motion which was referred to the undersigned contends there are "new facts" that support reopening. First defendant argues the government relied upon a "false fact" that he is danger to the community. As he argued earlier, he contends lab tests show that powder that was found at his home that was suspected to be fentanyl tested negative for the substance. This is not a new fact or new evidence. Rather it is the same evidence and same argument defendant presented to this Court earlier and which this Court rejected as to defendant's first motion to reopen. Moreover, defendant's attempt to distance himself from fentanyl is contradicted by the Grand Jury's determination there is sufficient evidence to charge him with both conspiracy to distribute fentanyl and distribution of fentanyl.

  Defendant next argues he should be released because since his original detention hearing a number of individuals at the FDC SeaTac have tested positive for COVID-19. Defendant contends he suffers from sleep apnea and has not been provided a C-PAP causing him to choke at night. Defendant implies his apnea places him at greater risk for COVID-19 related problems.

ORDER DENYING SECOND MOTION TO
REOPEN DETENTION - 4

The Court rejects this argument. There is nothing about having sleep apnea, alone, that calls for release. That is the Court would not release defendant simply because he has sleep apnea, and defendant does not argue otherwise. Defendant's argument thus rests upon a generalized concern about the current COVID-19 pandemic. That is, COVID-19 presents potentially serious health risks, these risks are heightened by jail conditions, and inmates at the FDC have tested positive for COVID-19. These are generalized concerns because they apply to all inmates. However generalized concerns about COVID-19, alone, are not a valid basis to reopen detention. Defendant asserts he suffers from sleep apnea but presents nothing showing sleep apnea is a condition that creates special COVID-19 health risks. The record also indicates defendant does not have any health condition COVID-19 risk factors and his relative youth (age 28) is a favorable risk factor.

Defendant also re-argues he is not a flight risk or danger and should be released because he has minimal criminal history; he runs a puppy kennel business; the $3,172 found in his mother's purse are proceeds from his puppy business, not drug proceeds; the guns he possessed were purchased legally; he has strong and significant family ties; and the co-defendant was released. These are arguments raised and rejected in the past and are accordingly not a basis to reopen the detention decision.

For the foregoing reasons the Court DENIES defendant's second motion to reopen detention. Dkt. 66.

DATED this 17th day of September, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge